1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11    JOSE ALVES, SR.,                         Case No.  1:12-cv-01883-SKO

12              Plaintiff,                      **ORDER REGARDING PLAINTIFF'S
                                                COMPLAINT**
13         v.

14    CAROLYN W. COLVIN,
      Acting Commissioner of Social Security,
15
                Defendant.
16
      _____/
17

18                              **INTRODUCTION**

19         Plaintiff Jose Alves, Sr. ("Plaintiff") seeks judicial review of a final decision of the

20    Commissioner of Social Security (the "Commissioner" or "Defendant") denying his claim for

21    Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to

22    Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is

23    currently before the Court on the parties' briefs, which were submitted, without oral argument, to

24    the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25                            **FACTUAL BACKGROUND**

26         Plaintiff was born in 1956, has a fourth grade education obtained in Portugal, and worked

27    as a truck driver.  (Administrative Record ("AR") 66, 159, 164.)  On July 27, 2010, Plaintiff filed

28    _____
      [1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.  (Docs. 8, 9.)

applications for DIB and SSI, alleging disability beginning on April 28, 2010, due to a lower back injury, lumbar surgery, chronic back pain, numbness in extremities, depression, high blood pressure, aorta aneurysm, and anxiety.  (AR 66-67, 158.)

**A.**     **Relevant Medical Evidence**

Plaintiff was seen at Kaiser Permanente ("Kaiser") between November 2009 and July 2010.  (AR 211-47.)  On July 13, 2009, Plaintiff was seen for a Department of Motor Vehicle ("DMV") commercial driver examination, where it was noted that he takes Lotensin for hypertension.  (AR 211.)  Plaintiff was moderately overweight, but "otherwise [had a] normal exam," and qualified for a one-year DMV certification with a history of hypertension on blood pressure medication.  (AR 211.)

On January 5, 2010, Plaintiff was seen by James King Redula, M.D., at Kaiser. (AR 212-15.)  Plaintiff complained of numbness and pain in his legs and feet.  (AR 212.)  Dr. Redula noted that Plaintiff had a history of a lumbar discectomy due to bilateral radiculopathy as well as neck surgery.  (AR 212.)  Plaintiff was prescribed Prednisone.  (AR 213.)   On April 13, 2010, Plaintiff returned to Dr. Redula and reported that his back pain had worsened for two weeks and was at a pain level of 10 out of 10 (with 10 being the highest level of pain).  (AR 218.) Plaintiff was injected with Toradol, morphine, and Phenergan, with no adverse reactions noted. (AR 218.)

On April 21, 2010, Plaintiff underwent a physical therapy evaluation at Kaiser.  (AR 220-22.)  The physical therapist noted that Plaintiff's lumbar range of motion was limited by pain, and that Plaintiff had taken "8 percocet today already."  (AR 220.)  Plaintiff reported that both legs were "very weak."  (AR 220.)  The physical therapist assessed that Plaintiff had "[p]robable flare of discogenic pain L3-4, L3 radiculopathy."  (AR 221-22.)

On May 8, 2010, a magnetic resonance imaging ("MRI") was performed at Kaiser on Plaintiff's spine.  (AR 237-38.)  The impression was:

> Prior laminectomy L4 and probably left laminotomy L3.  No significant compromise of the thecal sac.  Possible minimal significant compromise of the disk at L3-4 without compromise of the thecal sac.  No compromise of the neural foramina.  A good amount of fat is seen between the nerve roots and the disks.

1  (AR 238.)

2      On July 12, 2010, Plaintiff was seen by Helen Chung, M.D., at Kaiser.  (AR 223-27.)

3  Plaintiff had chronic low back pain since the 1990s, with a history of an L3, L4 laminectomy in

4  1992.  (AR 223.)  Plaintiff reported that his pain was "mostly in the low back, but also radiates

5  down the legs, worse on the [left] side, to the [anterior] thighs."  (AR 223.)  Plaintiff also reported

6  that he had numbness and tingling in his feet, his pain level was up to a 10 out of 10, and that

7  lifting, driving, and sitting were exacerbating factors.  (AR 223.)  Plaintiff's listed medications

8  were  Benazepril,  morphine,  Oxycodone-Acetaminophen,  hydrochlorothiazide,  Lipitor,  and

9  Atenolol.  (AR 224.)  Upon examination, Dr. Chung noted that Plaintiff was able to heel and toe

10  walk for a few steps, but he reported that it caused low back pain.  (AR 225.)  The treatment plan

11  included a recommendation for physical therapy for a lumbar program, water therapy, walking,

12  weight loss, and continuation of current opioid medications.  (AR 226.)

13      Plaintiff tested positive for opiate use on November 19, and December 22, 2010.  (AR 300,

14  302.)

15      On November 30, 2010, Plaintiff was seen by Fariba Vesali, M.D., for a comprehensive

16  orthopedic evaluation.  (AR 252-55.)  Plaintiff reported that he has had low back pain since 1992

17  when he was in an accident while driving a truck.  (AR 252.)  Plaintiff underwent back surgery in

18  the 1990s with some improvement.  (AR 252.)  He does not know what aggravates the back pain,

19  which subsides with pain medication; he also has occasional numbness of his feet.  (AR 25.)

20  Plaintiff complained of neck pain with radiation to shoulders, and reported that he underwent neck

21  surgery in the 1990s with some improvement.  (AR 252.)  The neck pain was constant, and

22  subsided with pain medication.  (AR 252.)  Plaintiff's hands hurt, and squeezing or picking up

23  objects aggravated the hand pain.  (AR 252.)  Plaintiff reported that he lives with his wife, drives a

24  car, does grocery shopping, and occasionally cooks and mows the lawn.  (AR 252.)  Plaintiff

25  stopped working as a truck driver in April 2010 because of pain.  (AR 252.)

26      Dr. Vesali noted that Plaintiff was "not in acute distress" and "did not have any difficulties

27  [getting] on and off the examination table.  He did not have difficulties [taking] off his shoes and

28

1  socks." (AR 253.)  Plaintiff complained of low back pain during the straight leg raising portion of

2  the exam.  (AR 254.)

3      Dr. Vesali noted the following general findings:

4      Spurling's Speed's and Phalen's tests are negative bilaterally.  Axial compression
       test is positive.  Patrick test was deferred due to knee pain.  There is tenderness on

5      bilateral elbow medial and lateral epicondyles.  There is no obvious inflammation
       in bilateral upper extremities.  There is tenderness on cervical, thoracic, and

6      lumbosacral spine.  There are myofascial tender points in bilateral upper trapezius,
       supra and infraspinatus, entire back, gluteus maximus.  There is a scar on the

7      lumbar spine.  There is no obvious inflammation in bilateral lower extremities.  No
       tenderness or pain on motion of knees.  Anterior and posterior drawer signs and

8      valgus and varus stress tests on knees are negative bilaterally.

9  (AR 254.)  Dr. Vesali diagnosed Plaintiff with "[c]hronic low back pain status post lumbar spine

10  laminectomy," and "[c]hronic neck pain status post neck surgery." (AR 255.)  Dr. Vesali provided

11  a functional assessment, stating that she did "not feel the condition will impose any limitations [on

12  Plaintiff] for 12 continuous months."  (AR 255.)  Dr. Vesali opined that Plaintiff "should be able

13  walk, stand and sit six hours in an eight-hour day with normal breaks," "does not need an assistive

14  device for ambulation," "should be able to lift and carry with no limitations," has "[n]o postural

15  limitations," has "[n]o manipulative limitations," and has "[n]o workplace environmental

16  limitations." (AR 255.)

17      On December 1, 2010, Plaintiff was seen by Jacklyn Chandler, Ph.D., for a psychological

18  mental status disability evaluation.   (AR 256-58.)   Dr. Chandler noted that Plaintiff had

19  experienced depression and anxiety since 2009, in reaction to chronic pain symptoms and the

20  resulting changes in his lifestyle.  (AR 256.)  Plaintiff's symptoms included sadness, anhedonia,

21  poor concentration, feelings of worthlessness, and social isolation. (AR 256.)  Dr. Chandler noted

22  that Plaintiff "stated he discontinued his education in the 8th grade in Portugal.  He did not obtain a

23  GED." (AR 257.)  Dr. Chandler opined that "[b]ased on the claimant's clinical presentation, and

24  his reported history and symptoms[,] the claimant appears to meet criteria for DSM-IV-TR

25  diagnoses of Pain Disorder Associated With Both Psychological Factors and Chronic Pain and

26  Adjustment With Mixed Anxiety and Depressed Mood, Chronic."  (AR 258.)   In assessing

27  Plaintiff's cognitive functioning and work related abilities, Dr. Chandler found that, during the

28  evaluation, Plaintiff was "able to understand, remember, and carry out simple instructions.  He had

mild difficulty with complex instructions.  He appears capable of adapting to changes in routine work settings.  The claimant has mild difficulty maintaining attention, concentration, pace and persistence for the duration of the evaluation."  (AR 258.)  Dr. Chandler further opined that "[b]ased upon observations of current behavior and reported psychiatric history[,] the claimant's ability to interact with the public, supervisors, and coworkers appears to be moderately limited." (AR 258.)

On December 20, 2010, State Agency physician R. Fast, M.D., assessed Plaintiff's physical residual functional capacity ("RFC")[2].    (AR 259-65.)  Dr. Fast opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand, walk and/or sit six hours in an eight-hour day; had unlimited abilities to push and/or pull; had no limitations for climbing, crawling, balancing, stooping, kneeling, and crouching; and no manipulative, visual, or environmental limitations.  (AR 260-62.)

On December 24, 2010, State Agency physician G. Johnson, M.D., assessed Plaintiff's mental residual functional capacity and opined that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instruction; maintain attention and concentration for extended periods; complete a normal workday and workweek without psychologically based interruption; interact appropriately with the general public; get along with coworkers or peers; maintain socially appropriate behavior; and respond appropriately to changes in the work setting. (AR 267-68.)  Plaintiff was not significantly limited in any other area.  (AR 267-68.)

Plaintiff was treated by Mitchell Cohen, D.O., between October 2010 and May 2012.  (AR 291-95, 323-28.)    On October 22, 2010, Dr. Cohen prescribed morphine and Percocet for Plaintiff's leg and back pain, and refilled those prescriptions in January 2011.  (AR 291-95.)  On January 13, 2011, Dr. Cohen cut Plaintiff's dosage of morphine and raised the dosage of Percocet. (AR 292.)

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.

On January 28, 2011, Plaintiff tested positive for morphine use.  (AR 298.)  The level of morphine was 10,000 ng/mL.  (AR 298.)

On February 11, 2011, an MRI of Plaintiff's lumbar spine found no abnormalities at L1-2; mild spondylosis at L2-3; evidence of a prior laminectomy at L3-4 with severe disc space narrowing, no protrusion or nerve impingement, and mildly narrow foramina; evidence of a prior laminectomy at L4-5 with some moderate narrowing and desiccation of the intervertebral disc, small left paracentral extrusion, and mildly narrowed foramina; and no significant abnormalities at L5-S1.  (AR 296.)  The radiologist's impressions were "[p]ostoperative changes related to prior laminectomies at L3-4 and L4-5" and "[s]mall left paracentral extrusion at L4-5, possible mildly impinging the left L5 nerve root."  (AR 296.)

Between February 2012 and May 2012, Dr. Cohen treated Plaintiff for back pain and hypertension.  (AR 323-28.)  The list of medications Plaintiff was taking as of May 4, 2012, was Percocet (oxycodone-acetaminophen), Lipitor, hydrochlorothiazide, Benazepril, aspirin, Colace, Neurontin, and morphine.  (AR 324.)

On May 7, 2012, Dr. Cohen completed a questionnaire, indicating he felt that Plaintiff's medical impairments of chronic neck and back pain precluded him from performing any full-time work at any exertion level.  (AR 322.)  Dr. Cohen's opinion was based on past history and prior x-rays.  (AR 322.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's application for disability initially and again on reconsideration; consequently, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 72-84.)  On May 23, 2012, ALJ Timothy S. Snelling held a hearing in which Plaintiff, represented by counsel, testified.  (AR 39-65.)

Plaintiff testified that he was born in Portugal and had four years of schooling there.  (AR 45.)  He could read and write in Portuguese, could read a "little bit of English" but could not spell in English.  (AR 45.)  Plaintiff previously worked as a truck driver, but had to stop because the pain in his back and neck was "so intense."  (AR 47.)  Plaintiff testified that he became disabled as

of April 28, 2010, because he was "barely working after that date," and "couldn't do it [any] more."  (AR 51.)

Plaintiff appeared at the hearing with a cane, saying that he needed it because he would "sometimes . . . lose balance."  (AR 45.)  Plaintiff stated that he "constantly" felt "grinding pain" in his low back that would travel down his legs, and that his prior back surgery did not alleviate the pain.  (AR 47-48.)  When asked if he had been on continuous narcotic pain medication since his back surgery in 1993, Plaintiff responded, "Not the same, a little less stronger medicine.  And then they kept increasing it up and up, and now it's really high."  (AR 48.)  Plaintiff testified that he was taking morphine and Percocet at the time of the hearing, and that he had been on that level of pain medication for almost three years.  (AR 49.)  Previously, Plaintiff had been taking Vicodin, then Percocet, then morphine shots and cortisone shots.  (AR 49.)

Plaintiff testified that he spent his day "[s]itting around, watching a little TV, laying down [and] walking a little bit."  (AR 52.)  The most Plaintiff could walk was one block, and he used his cane.  (AR 53.)  Plaintiff had a dog, but he did not take the dog for a walk.  (AR 53.)  Plaintiff was seeing a family practice doctor, who was refilling the medications prescribed by previous doctors. (AR 53-54.)

Plaintiff stated that he was unable to concentrate, but he did not seek medical care for his mental health issues because he did not believe his insurance would pay for it.  (AR 58.)  Plaintiff testified his hands would swell and hurt sometimes, with tingling numbness, and he was only able to use his hands for 10 minutes before needing to rest.  (AR 58-59.)  He also had radiating pain in both his legs.  (AR 61.)  Plaintiff believed that without pain medication, his pain level would be a 10 out of 10.  (AR 63.)  Plaintiff also testified that he was examined by a Social Security doctor, who did not perform any tests on him.  (AR 60.)

## C.    The ALJ's Decision

On June 8, 2012, the ALJ issued a decision finding Plaintiff not disabled from April 28, 2010, through the date of the decision.  (AR 19-34.)  The ALJ found that (1) Plaintiff had met the insured status requirements of the Act through September 30, 2011; (2) had not engaged in substantial gainful activity since April 28, 2010, the alleged disability onset date; (3) had the

following severe impairments: tendonitis of both hands, peripheral neuropathy, sciatica, status post cervical fusion, post-laminectomy of the lumbar spine, degenerative joint disease of the lumbar spine, myofascial tender points, a history of abdominal aortic aneurysm, pain disorder, adjustment disorder with mixed anxiety, and depressed mood based on the requirements in the Code of Federal Regulations; (4) did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) had the RFC to perform a wide range of medium work, but was limited to occasional climbing of ladders, ropes, scaffolding, ramps, and stairs, no more than frequent stooping, bending, crouching, and kneeling, no more than frequent fine manipulation, and no more than frequent face-to-face interaction with the general public, coworkers, and supervisors; (6) was capable of performing his past relevant work as a truck driver; and (7) had not been under a disability as defined in the Act since April 28, 2010, through the date of the decision.  (AR 24-34.)

**D.     The Appeals Council Decision**

Plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on September 20, 2012.  (AR 1-3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**E.     Plaintiff's Current Appeal**

On November 15, 2012, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision.  (Doc. 1.)  Plaintiff contends that the ALJ (1) erred in finding Plaintiff could perform his past relevant work as a truck driver, (2) erred in weighing the medical opinion evidence, and (3) failed to give legally sufficiently reasons for finding Plaintiff's testimony not credible.  (Doc. 12.)

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards

1   and whether substantial evidence exists in the record to support the Commissioner's findings.  *See*

2   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

3        "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v.*

4   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

5   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

6   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

7   305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both

8   the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

9   may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v.*

10  *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

11                                    **APPLICABLE LAW**

12       An individual is considered disabled for purposes of disability benefits if he is unable to

13  engage in any substantial, gainful activity by reason of any medically determinable physical or

14  mental impairment that can be expected to result in death or that has lasted, or can be expected to

15  last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

16  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or

17  impairments must result from anatomical, physiological, or psychological abnormalities that are

18  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

19  such severity that the claimant is not only unable to do his previous work, but cannot, considering

20  his age, education, and work experience, engage in any other kind of substantial, gainful work that

21  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

22       The regulations provide that the ALJ must undertake a specific five-step sequential

23  analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine

24  whether the claimant is currently engaged in substantial gainful activity.    20 C.F.R. §§

25  404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant

26  has a severe impairment or a combination of impairments significantly limiting her from

27  performing basic work activities.   20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the Third Step,

28  the ALJ must determine whether the claimant has a severe impairment or combination of

1   impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20

2   C.F.R. 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step,

3   the ALJ must determine whether the claimant has sufficient residual functional capacity despite

4   the impairment or various limitations to perform her past work.   20 C.F.R. §§ 404.1520(f),

5   416.920(f).  If not, in Fifth Step, the burden shifts to the Commissioner to show that the claimant

6   can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§

7   404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

8   sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

9   (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

10                                    **DISCUSSION**

11          Plaintiff contends that the ALJ erred in finding Plaintiff could perform his past relevant

12   work as a truck driver, because Plaintiff's medications would preclude such work and Plaintiff

13   failed to provide factual evidence to support the finding.  The ALJ further erred in weighing the

14   medical opinion evidence by assigning reduced weight to the opinion of Plaintiff's treating

15   physician, Dr. Cohen, and relying upon Dr. Vesali's opinion for his findings.  Additionally, the

16   ALJ failed to give legally sufficient reasons for finding Plaintiff's testimony not credible.

17   (Doc. 12.)

18          Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff could

19   perform his past relevant work or, alternatively, could perform other work that exists in significant

20   numbers in the national economy.  The ALJ reasonably evaluated the medical opinions in the

21   record and found that the objective evidence did not support Dr. Cohen's opinion.  Further, the

22   ALJ reasonably found that Plaintiff's subjective allegations were less than credible.  (Doc. 15.)

23   **A.      The ALJ's Finding Regarding Plaintiff's Ability to Perform Work**

24          **1.      The ALJ Erred in Failing to Consider the Impact of Plaintiff's Prescription
                       Drug Use on His Past Relevant Work**
25

26          The ALJ found that Plaintiff was "capable of performing past relevant work as a truck

27   driver."  (AR 31.)  The ALJ determined that Plaintiff had previously worked as a truck driver,

28

1   which is a medium-exertional level job, and Plaintiff performed the position at a medium level for

2   over five years.  (AR 31.)  The ALJ stated as follows:

3
4           In comparing the claimant's residual functional capacity with the physical and
            mental demands of this work, I find that the claimant is able to perform it as
            actually and generally performed.  The job is performed at the medium exertional
5           level in the national economy, and it was performed at the medium level by the
            claimant.  As the claimant is capable of a wide range of medium work, neither type
6           of performance is precluded by the claimant's residual functional capacity.

7   (AR 31.)

8           Plaintiff contends that his medications would preclude his past relevant work as a truck

9   driver.  (Doc. 12, 11:3-13:15.)  Plaintiff was prescribed morphine and Percocet, which was noted

10  by the ALJ to be "a lot of pain medication."  (AR 49; *see also* AR 218, 220, 224, 292-95,323-28

11  (medical records indicating Plaintiff's prescribed use of morphine and/or Percocet).)  Plaintiff

12  asserts that morphine and Percocet are Schedule II narcotic pain medications,[3] with known side

13  effects of causing drowsiness.[4]  (Doc. 12, 11:4-7, n. 2-4.)  Plaintiff contends that, because of his

14  use of prescribed medication, he would not be able to pass the mandatory drug test required to

15  work as a commercial truck driver and would thus be precluded from performing his past relevant

16  work.  (Doc. 12, 12:6-13:16.)  Plaintiff additionally contends the ALJ erred in failing to provide

17  factual evidence to support the finding that Plaintiff could perform past relevant work.  (Doc. 12,

18  14:1-15.)

19          Defendant contends Plaintiff did not raise this issue during the hearing with the ALJ or

20  before the Appeals Council.  (Doc. 15, 17:1-3.)  Further, Plaintiff testified that he began taking

21  pain medication after his back surgery in 1993 and worked as a truck driver after that point.  (Doc.

22
---
23  [3] The Schedule of Controlled Substances is set forth under 21 U.S.C. § 812.  Schedule II controlled substances are
    defined as "(A) The drug or other substance has a high potential for abuse.  (B) The drug or other substance has a
24  currently accepted medical use in treatment in the United States or a currently accepted medical use with severe
    restrictions.  (C) Abuse of the drug or other substances may lead to severe psychological or physical dependence."
    21 U.S.C. § 812(b)(2).
25
26  [4] Morphine is "the principal and most active opioid alkaloid of opium."  *Dorland's Illustrated Medical Dictionary*
    ("*Dorland's*") 1199 (31st ed. 2007).  The Mayo Clinic indicates that "more common" side effects of morphine include
    "drowsiness," "relaxed and calm feeling," and "sleepiness or unusual drowsiness."  *See*
27  *http://www.mayoclinic.org/drugs-supplements/morphine-oral-route/side-effects/DRG-20074216*.    Percocet is the
    "trademark for a combination preparation of oxycodone hydrochloride and acetaminophen."  *Dorland's* 1429.  The
28  Mayo Clinic indicates that "more common" side effects include "dizziness" and "unusual tiredness or weakness."  *See*
    *http://www.mayoclinic.org/drugs-supplements/oxycodone-and-acetaminophen-oral-route/side-effects/DRG-20074000.*

11

15, 7:4-7.)  Plaintiff failed to offer evidence and meet his burden of proof at Step Four to show that he was disabled.  (Doc. 15, 7:8-15.)  Additionally, the ALJ made an alternative finding at Step Five that Plaintiff could perform other work.  (Doc. 15, 7:16-23.)

Plaintiff cites to *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010) for the contention that "[i]f a drug prescription disqualifies a claimant from performing his past relevant work, he is not capable of returning to that work."  In *Berry*, the plaintiff was former commercial courier driver who alleged that his disabling conditions would prevent him from returning to his prior relevant work because his prescription pain medications would cause him to fail his job's mandatory drug testing requirements.  *Id*. at 1230.  Observing that the Dictionary of Occupational Titles ("DOT") job listing did not mention a drug testing requirement, the ALJ denied the plaintiff's offer to prove that the job carried such a requirement and refused to consider whether, if such a requirement existed, the plaintiff would be capable of meeting it.  *Id*. at 1231.  The Ninth Circuit found that the "ALJ erred by precluding [the plaintiff] from making a record whether his medically required need to take prescription drugs would bar him from working as a courier."  *Id.*

Plaintiff contends his past relevant work requires a commercial truck driver license, which in turn requires drug testing for narcotics.  (Doc. 12, 12:21-22; s*ee also* 49 C.F.R. Part 40; Dept. of Trans. Publ. FMCSA-E-06-003.)  While "[t]he Commissioner generally does not consider the claimant's ability to secure any licensure at step four," *Cribbs v. Astrue*, No. 1:11-CV-00654-AWI-SMS, 2012 WL 4090186, at *20 (E.D. Cal. Sept. 17, 2012), the Ninth Circuit has found that if a claimant's "prescribed medication regime to treat his potentially disabling condition would categorically prevent him from obtaining work as a courier by rendering him physically unable to pass a drug test that is mandatory across employers, then he cannot meaningfully be said to be capable of working" at that position.  *Berry*, 622 F.3d at 1231.  "A mandatory requirement that employers cannot hire people with a certain level of pain medication in their blood is in essence a physical demand of the job.  The ALJ was not permitted to ignore the possibility that such a mandatory requirement exists, in the face of [the plaintiff's] offer of proof."  *Id.*

An employer of a commercial truck driver is required to perform mandatory urinalysis testing of its employee, which occurs at hiring, after an accident, and throughout the course of

employment.  49 C.F.R. Part 40, Subp. B.  The cutoff concentration for initial drug testing for opiate metabolites, specifically codeine/morphine, is 2,000 ng/mL.  *Id*. at Subp. F.  If the prescription drugs being used by a commercial driver cannot be changed to a type that would pass a drug test, the commercial truck driver can be found to be "medically unqualified" and to "pose a significant safety risk."  *See* 49 C.F.R. Part 40, Subp. G.

Here, Plaintiff shows that mandatory drug testing is required for his past relevant, and his medical records raise the issue of whether Plaintiff could pass a mandatory drug test.  Based on Plaintiff's prescription drug use, he tested positive for opiates (AR 300, 302), and had a reading of over 10,000 ng/mL for morphine -- far beyond the 2,000 ng/mL amount allowed.  (AR 298.) Accordingly, Plaintiff submitted medical records that the ALJ should have considered when determining if Plaintiff could perform past relevant work that requires mandatory drug testing.

Defendant asserts that Plaintiff testified that he worked as a commercial truck driver for over a decade while taking narcotic pain medication, which he now contends would render him unable to hold a commercial truck driver's license.  (Doc. 15, 6:8-10.)  This assertion is not supported.  While Plaintiff testified that he had been on medication since his back surgery in 1993, he also noted that previously the medication was "a little less strong[]" than his current medication, and that his doctors kept increasing his medication "up and up, and now it's really high." (AR 48.)  Additionally, on November 13, 2009, Dr. Atienza at Kaiser noted Plaintiff was only taking medication for hypertension.  (AR 211.)  Defendant points to no medical evidence in the record that Plaintiff was taking narcotic pain medication at a level that would have been impermissible while he was working as a commercial truck driver.  As such, it is not clear that Plaintiff was, in fact, performing his past relevant work on medication that would render him unable to pass a drug test.

Defendant further contends that because Plaintiff failed to raise this argument before the ALJ or the Appeals Council, it should be disregarded.  (Doc. 15, 7:1-3.)  "The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates." *Hackett v.*

1   *Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (citing *See Sims v. Apfel,* 530 U.S. 103 (2000)).

2   Thus, the district court may properly consider Plaintiff's contentions.

3        Accordingly, Plaintiff's prior relevant work appears to require mandatory drug testing, and

4   Plaintiff's medical records raise an issue of whether Plaintiff would be able to pass the mandatory

5   drug testing due to his use of prescribed pain killers.  Because "the level of pain medication in

6   [Plaintiff's] system as a result of his prescribed treatment regime is a direct physical consequence

7   of his impairment, its related symptoms and his physician-prescribed treatment," the ALJ is

8   required to consider what impact the medications have on Plaintiff's ability to do his prior relevant

9   work.  *Berry*, 622 F.3d at 1233.

10        **2.**     **The ALJ Did Not Meet His Step Five Burden**

11        Defendant contends that the ALJ provided an alternate non-disability finding at Step Five,

12   and found that Plaintiff was not disabled by using the Medical-Vocational Guidelines (the

13   "Grids").   (Doc. 15, 7:16-18.)   Plaintiff asserts that because his RFC provides for multiple

14   non-exertional limitations, the limitations eroded the base of jobs Plaintiff could perform,

15   requiring the testimony of a vocational expert ("VE").  (Doc. 16, 3:13-14.)  Additionally, Plaintiff

16   notes the ALJ did not cite any specific job in the national economy that Plaintiff could perform.

17   (Doc. 16, 3:17-18.)

18        After determining that Plaintiff could perform his past relevant work as a commercial truck

19   driver at Step Four, the ALJ noted that "there are other jobs existing in the national economy that

20   [Plaintiff] is also able to perform," and thus made "alternative findings" at Step Five.  (AR 31.)

21   The ALJ did not provide any specific job existing in the national economy that Plaintiff could

22   perform.  Instead, the ALJ noted that Plaintiff was able to meet the demands of medium work and

23   was only "minimally limited," which would "not ordinarily have a significant impact on the broad

24   world of work" that Plaintiff could perform.  (AR 33.)  As such, the ALJ determined that a finding

25   of "not-disabled" would be directed by the Grids.  (AR 34.)

26        At Step Five of the sequential evaluation, the burden shifts to the Commissioner to show

27   that the claimant can perform other jobs that exist in the national economy. *Bray v. Comm'r Soc.*

28   *Sec. Admin*., 554 F.3d 1219, 1222 (9th Cir.2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th

1    Cir. 2007).   To meet this burden, the Commissioner "must identify specific jobs existing in

2    substantial numbers in the national economy that [the] claimant can perform despite [his]

3    identified limitations."  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (citation and internal

4    quotation marks omitted).

5          There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a

6    vocational expert, or (b) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R.

7    pt. 404, subpt. P, app. 2."  *Tackett*, 180 F.3d at 1099; *accord Lockwood v. Comm'r Soc. Sec.*

8    *Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  However, "[w]hen [the Grids] do not adequately

9    take into account [a] claimant's abilities and limitations, the Grids are to be used only as a

10   framework, and a vocational expert must be consulted."  *Thomas v. Barnhart*, 278 F.3d 947, 960

11   (9th Cir. 2002).

12         Here, Plaintiff was "an individual closely approaching advanced age on the alleged

13   disability onset date," and "subsequently changed category to advanced age."  (AR 31.)  The ALJ

14   found that Plaintiff had the RFC to "perform a wide range of medium work as defined in 20 C.F.R.

15   404.1567(c) and 416.967(c), but he is limited to occasional climbing ladders, ropes, scaffolding,

16   ramps, and stairs; no more than frequent stooping, bending, crouching, crawling, and kneeling; no

17   more than frequent fine manipulation; and no more than frequent face-to-face interaction with the

18   general public, coworkers, and supervisors."  (AR 26.)

19         The ALJ asserts that Plaintiff's minimal limitations would not significantly erode the job

20   base that Plaintiff could perform.  (AR 33.)  However, it is not clear that the Grids support the

21   ALJ's findings.  For a claimant of advanced age with a "limited or less" education,[5] who is either

22   unskilled or skilled/semiskilled with non-transferrable skills, the claimant would be disabled at the

23   sedentary, light, or medium exertional levels according to the Grids.  20 C.F.R. pt. 404, subpt. P,

24   app. 2.  While a claimant who was skilled or semiskilled with transferable skills would be found

25   "not disabled" under the Grids, the ALJ did not do a skills assessment of Plaintiff's prior work.

26   As such, it cannot be determined whether the Grids support the ALJ's finding that Plaintiff was not

27

28   [5] Plaintiff has either a fourth or eighth grade education obtained in Portugal.  (*See* AR 29.)  As such, there appears to
     be no dispute that Plaintiff does not have a high school education.

1   disabled.  Further, because there are limitations to Plaintiff's RFC that are not accounted for in the

2   Grids, even if those limitations are "minimal," the ALJ would be required to provide testimony by

3   a VE setting forth that Plaintiff can perform specific jobs at specific exertional levels.   *See*

4   *Thomas*, 278 F.3d at 960; *Bray*, 554 F.3d at 1223, n. 4 (9th Cir. 2009).

5          Accordingly, the ALJ failed to meet his burden at Step Five to show that Plaintiff was not

6   disabled and able to perform work in the national economy.

7   **B.        The ALJ's Consideration of Medical Evidence**

8          Plaintiff contends the ALJ erred in providing reduced weight to the opinion of Plaintiff's

9   treating physician, Dr. Cohen, and in relying on Dr. Vesali's opinion to support the ALJ's finding.

10  (Doc. 12, 15:3-18:17.)   Defendant asserts the ALJ properly evaluated the medical evidence.

11  (Doc. 15, 7:25-10:20.)

12          **1.        Legal Standard**

13          The medical opinions of three types of medical sources are recognized in Social Security

14  cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not

15  treat the claimant (examining physicians); and (3) those who neither examine nor treat the

16  claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

17          Generally, a treating physician's opinion should be accorded more weight than opinions of

18  doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater

19  weight than a non-examining physician's opinion.  *Id*.  Where a treating or examining physician's

20  opinion is uncontradicted by another doctor, the Commissioner must provide "clear and

21  convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id*.  If the treating

22  or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must

23  provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons

24  must be supported by substantial evidence in the record.  *Id*. at 830-31; *accord Valentine v.*

25  *Comm'r Soc. Sec. Admin*., 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by

26  setting forth a detailed and thorough summary of the facts and conflicting clinical evidence,

27  stating her interpretation thereof, and making findings.  *Tommasetti v. Astrue*, 533 F.3d 1035,

28  1041 (9th Cir. 2008).

1

**2.     The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting Dr. Cohen's Opinions**

2     Plaintiff asserts the ALJ erred in assigning reduced weight to the opinion of Dr. Cohen,

3     Plaintiff's treating physician. (Doc. 12, 15:3-17:13.)

4     In considering Dr. Cohen's opinion, the ALJ determined that:

5     Mitchell A. Cohen, D.O., opined on May 7, 2012[,] that the claimant was unable to
       perform full time work at any exertional level . . . . Dr. Cohen's opinion is given
6      reduced weight because as was analyzed above the diagnostic and objective
       findings support the claimant's ability to perform a wide range of medium work.

7

8     (AR 30.)  The ALJ makes no other findings regarding Dr. Cohen.  (*See* AR 27-31.)

9     The Ninth Circuit has "held that 'clear and convincing' reasons are required to reject the . . .

10    doctor's ultimate conclusions." *Lester*, 81 F. 3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418,

11    422 (9th Cir.1988)).  Further, if a doctor's opinion is contradicted by another doctor, the ALJ "may

12    not reject this opinion without providing 'specific and legitimate reasons supported by substantial

13    evidence in the record." *Id*.  As such, to reject a physician's opinion, the ALJ must provide an

14    interpretation of the facts and conflicting clinical evidence, and make a finding based on that

15    interpretation.  *See Tommasetti*, 533 F.3d at 1041.  It is improper for the ALJ to set forth

16    conclusions rejecting a doctor's findings without providing an interpretation of the facts. "The ALJ

17    must do more than offer his conclusions. He must set forth his own interpretations and explain

18    why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

19    Here, the ALJ does not provide any reasons for how or why Dr. Cohen's opinions conflict

20    with the ALJ's findings.  The ALJ need not recite the "magic words" of "I reject [a doctor's]

21    opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  However, "[t]o say that

22    medical opinions are not supported by sufficient objective findings or are contrary to the

23    preponderant conclusions mandated by the objective findings does not achieve the level of

24    specificity our prior cases have required, even when the objective factors are listed seriatim."

25    *Embrey*, 849 F.2d at 421.  The ALJ gives Dr. Cohen's findings reduced weight because they

26    conflict with the ALJ's other findings regarding Plaintiff's capabilities.  (*See* AR 30.)  The ALJ

27    fails to explain the conflict or provide any reason as to why Dr. Cohen's opinion should be

28    rejected.  (*See* AR 30.)

The Commissioner's opposition brief provides a discussion of how Dr. Cohen's opinion conflicts with the findings of other physicians, as well as issues with Dr. Cohen's findings.  (Doc. 15, 8:18-10:7.)  These reasons, however, were not articulated in the ALJ's decision.  While the Court can draw reasonable inferences from the ALJ's opinion, *Magallanes*, 881 F.2d at 755, the Court cannot consider Defendant's post hoc rationalizations.  The Ninth Circuit has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."  *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts.").  An agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision.  *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001).

Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Cohen's opinion.

**3.      The ALJ Properly Supported His Reliance on Dr. Vesali's Findings**

Plaintiff contends that the ALJ erred in relying upon Dr. Vesali's opinions because the ALJ relied heavily on Dr. Vesali's findings to support the determination that Plaintiff was capable of medium range work, but found that the medical record would not support Dr. Vesali's claim that Plaintiff's condition would not last for 12 continuous months.  (Doc. 12, 17:20-23.)  Further, the ALJ did not ultimately adopt Dr. Vesali's opinion that Plaintiff had no limitations.  (Doc. 12, 17:24-18:1.)

In considering Dr. Vesali's opinion, the ALJ found that:

> Dr. Chung and Dr. Vesali's findings upon examination indicate some limitation, but not to the extend alleged by the claimant.  While the doctors found the claimant to have some tenderness to palpation, a reduced range of motion of the lumbar spine, and a mildly positive straight leg raise, they also found the claimant to have a nonantalgic gait as well as full grip strength and muscle strength of the upper and lower extremities . . . . Furthermore, Dr. Vesali observed that the claimant was able to get on and off the examination table and take his shoes and socks off without difficulty.  The doctor also noted that the claimant was not using an assistive device . . . .
>
> Dr. Vesali opined that the claimant's condition would not impose any limitations for twelve continuous months  . . . . Dr. Vesali's opinion is given reduced weight because it is inconsistent with the doctor's findings that the claimant had chronic

18

1    pain with some tenderness to palpation, a reduced range of motion of the lumbar
2    spine, and a mildly positive straight leg raise, all of which show the claimant to
     have some limitation that is likely to last for twelve continuous months.

3    (AR 30.)

4         The ALJ may properly rely upon selected portions of a medical opinion while rejecting

5    other parts.  *See Magallanes*, 881 F.2d at 753.  The ALJ relied upon Dr. Vesali's findings but

6    explained how those findings conflicted with Dr. Vesali's ultimate opinion.  The Ninth Circuit has

7    found that when a doctor's conclusions are not consistent with his own findings, that is a specific

8    and legitimate reason for rejecting or giving that opinion less weight.  *See Young v. Heckler*,

9    803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant

10   was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent

11   with doctor's prior medical reports).  As such, the ALJ was entitled to reject inconsistent portions

12   of Dr. Vesali's opinion while relying on other parts, provided the ALJ explained his reasoning.

13   *See Magallanes*, 881 F.2d at 753; *Tommasetti*, 533 F.3d at 1041.

14        Here, the ALJ explained and gave reasons why he was relying on Dr. Vesali's opinion, but

15   at the same time rejecting portions of it.  (*See* AR 34-35.)   Accordingly, the ALJ properly

16   explained his reliance and rejection of portions of Dr. Vesali's findings..

17   **C.      The ALJ's Determination of Plaintiff's Credibility**

18        Plaintiff contends the ALJ improperly rejected his testimony concerning his impairments

19   and failed to properly evaluate his credibility.   (Doc. 12, 18:17-21:23.)   According to the

20   Commissioner, however, the ALJ found that the record contained substantial evidence to support

21   the ALJ's conclusions.  (Doc. 15, 10:21-13:16.)  In considering Plaintiff's credibility, the ALJ

22   found that Plaintiff's "medically determinable impairments could reasonably be expected to cause

23   the alleged symptoms; however, the claimant's statements concerning the intensity, persistence

24   and limiting effects of these symptoms are not credible to the extent that they are inconsistent with

25   the [ALJ's] residual functional capacity assessment."  (AR 29.)

26        Because the Court remands this case for renewed consideration of the medical evidence,

27   the Court dispenses with an exhaustive analysis of the ALJ's assessment of Plaintiff's credibility.

28   Consideration of Plaintiff's credibility is inescapably linked to conclusions regarding the medical

evidence.  20 C.F.R. §§ 404.1529, 416.929.  As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's creditability.[6]

**D.     Remand is Warranted**

As a general rule, remand is warranted where additional administrative proceedings could remedy the defects in the Commissioner's decision.  *See Harmon v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this case, remand is appropriate for renewed consideration of Plaintiff's use of pain medication on his ability to do prior relevant work, whether there are other jobs Plaintiff can perform, Dr. Cohen's medical opinion, and Plaintiff's credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jose Alves, Sr., and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 27, 2014**                                **/s/ Sheila K. Oberto**
                                                                          UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes, however, that one of the reasons relied upon by the ALJ -- that Plaintiff provided conflicting information about his educational level -- does not appear to be a clear and convincing reason to find Plaintiff less than credible.  There is no dispute that Plaintiff does not have a high school diploma, and whether Plaintiff only had a fourth grade education in Portugal (as he reported in his application (AR 159) and testified at the hearing with the ALJ (AR 45)), or had an eighth grade education (as noted by Dr. Chandler (AR 257)) appears immaterial.  The Court makes no assessment regarding the other reasons set forth by the ALJ for finding Plaintiff not fully credible.